Good morning. This was a response. Just for the record, I know you gave us your name before, but I'll start over again. The name is of Post K. Attorney for Petitioner Eric Dolukhanyan. This was a case about a gentleman who was a political party member. It dealt with corruption. He described numerous incidents of harm that occurred to him in Armenia. It was a judge-denied based on credibility issue based on testimony regarding two arrests or alleged arrests that happened in the United States. The judge also cited lack of corroboration, and she cited that one of the incidents described made the respondent guilty of a serious non-political crime that made him ineligible for asylum. The problem with all this testimony and most of the decisions regarding these arrests was that it had nothing to do with this claim. It didn't go to the heart of the claim. It was not a Real ID Act case. It had nothing to do whatsoever with it. But I thought the key thing as far as the BIA was that they thought the story about his version of the accident wasn't true. I understand. So even if you take that, I don't think they – I understand what you're saying. Basically, even if you take that incident and find that we don't believe that it happened based on political grounds, he didn't dispute that there was an accident. He didn't dispute that someone died. He, in his opinion, believed that he was set up. And even if you take that one incident aside, even the judge later in her decision said the rest of the things he testified credibly and consistently. He had declarations from his wife and her mother-in-law. And I think the majority of the judge's decision was – had to do with arrests that occurred here in the United States, which he described. That was something that confused me. Did the IJ find – and the BIA agree that because of these issues about the arrest in the United States and him supposedly lying about the accident, that the rest of it about him being kidnapped and his wife being beaten and all that wasn't true, didn't happen, or wasn't relevant? I mean, in other words, often a credibility finding simply means nothing you said is true. And that didn't make sense either because the IJ on page 72 even noted that aside from the points already mentioned, the petition provided consistent description of the alleged events in Armenia. So what do the arrests in the United States have to do with what happened to him in Armenia? Even if we take the accident and she could have said, hey, I don't believe this was politically motivated. You said they were consistent. Did you say they were credible? Detailed – What page are you on now? 72 of the record. Consistent description of the alleged events in Armenia. So the only events she commented on her credibility finding was the arrests in the United States that at first she said, I don't even want to hear about them. They didn't lead to convictions. Why do we care? They're not relevant. And then we went to this whole big thing about that he didn't testify credibly regarding these events that were allegedly not relevant. And then the second part of it was the father's application. The father was granted asylum at an earlier date and in a section of the father's application, the father relayed that both sons were in Russia. And this was in the father filed application in February of 2002 and it was heard in Anaheim in April of 2002. The problem with that was even the judge says, I don't see any inconsistency because it doesn't say when he was in Russia. So first the judge says, I don't see any inconsistency. The trial attorney, the strongest language she had to use was implies and based on that they found him not credible based on the arrests in the United States that he described adequately. He even pointed out in the record, I don't even know if this is an arrest. He told them about the two incidents that occurred to him, being taken to the police station for the burglary and not having an ID. And then the arrests with the credit cards that the trial attorney introduced records for. But none of these led to court hearings, none of them led to convictions. He said, I don't even know if this is an arrest. And the judge found him not credible for that even though she said they were not relevant. And then the judge used the father's application who was granted asylum. It's funny, the government argues, first the strongest language that the government used was it implies that he was in Russia when he allegedly described events in Armenia. That's the strongest language. And then the judge said, I don't see any. Also the dates didn't match up as I recall because he said that he was I guess in Armenia in December. And they said, well so then he couldn't have been there in Russia in February which doesn't make sense either. Well this was not his dates. This was the application that his father filed. I understand that but he never said or didn't say whether he was there in February. He said he wasn't. He said he was in Armenia. He said he was never in Russia. He said he didn't talk to his father during that time. He said he spoke to his father before he left to the United States. And he spoke to him in New Years of 2002 after this period had passed. And I believe the other issue was corroboration. I believe the court, even though we had no clue, no indication that credibility was ever an issue because she found the arrest records irrelevant. She said the arrest records were irrelevant. And then the father's application said it was not an inconsistency. We get a decision that we should have provided corroboration. But first of all, the mother and the sister who were in the United States were not in Armenia for the majority of the events. They had gone to the United States in August 2000. That is before a majority of his events occurred. And they were not... The problem that I have here is just with his characterization of what happened regarding the accident. Fair enough. And the IJ's assessment. Fair enough. Even if we take that one incident... So how do we explain it? I'll explain it, Your Honor. The strongest word the IJ used to describe... He said the testimony was misleading. That's not inconsistent. He believed he was set up. Him in his heart, he believes he was set up. The witness testimony in the court document says they fell asleep. Well, if we're driving and I say we fell asleep, how do I know that you fell asleep? He said I didn't fall asleep. So he argues that this was set up. He doesn't think that he should have been convicted. He thinks it was related to his political activities because when he was later in jail for the same incident, they asked him regarding the documents. But even if we take that one incident aside, it does not mean that the rest of his case was not credible, which the judge even says is detailed and consistent. You know how many times we have to point out... One inconsistency that's supported by substantial evidence under our case law is sufficient to uphold the credibility, the adverse credibility determination. Well, this was a pre-real idea case. Honestly, I don't see an inconsistency. The judge can argue, hey, I think you were rightfully convicted. And he can say, no, I wasn't. But there was not an inconsistency. He believes that he wasn't allowed to present his witnesses. He believes he wasn't allowed to present evidence. And he was wrongfully convicted. And he believes it was related to his activities. There was... And as far as the father's application, the best person who would have cleared that up would have been the father. But we went to court on this matter 19 times. The matter, the master, the filing, and then two times the merits hearings. We had two merits hearings because it was continued. We had 15 continuances. 13 because the government was not ready and did not have the file. And one because the judge was ill. And one because she required a California background check, which was never asked for. If the father died after the 12th hearing, if the matter was not continued, we could have cleared up that inconsistency. But after 12 hearings, the father died. Was the father ever in this country? He was. He was granted asylum by an immigration judge in Los Angeles a few years earlier. Is there any finding? The prosecution in Armenia, did it depend on him having fallen asleep or not having fallen asleep? I mean, you can't quite tell what the crime was. I think it was, I would equate it to involuntary manslaughter. When someone's driving when there shouldn't be, when they're tired and they fell asleep. Because based on the length of the sentence, he was given probation. It doesn't never quite say that. That's what my opinion would be. Basically, I think because he got into an accident and he fell asleep. That's what the testimony of the witness was in the court documents. It went above normal negligence. I don't think it was, they basically, if I had to go by what the court documents. Well, the court documents don't say, but you'd have to look up Article 173, Part 2 of the Criminal Code of the Republic of Armenia, which I have not done. I am not either. Why don't we hear from the government and you've got a little time. Fair enough. May it please the court, good morning. John Holt for the Attorney General. The issue before the court is whether the evidence fails to compel the reasonable fact finder would conclude that the evidence doesn't establish the petitioner was credible. So the issue is not whether or not the petitioner suffered past persecution. The issue is not, as petitioner's counsel argued this morning, whether the criminal conviction in Armenia was a basis to deny his eligibility for asylum. And very importantly, the issue is not whether the post-real ID corroboration law in Wren applies. This is a pre-real ID act case, and so those concerns in legal matters are not even before the court. So the issue is whether the evidence compels a reasonable fact finder would conclude that the petitioner was not credible. The immigration judge and the board both focused on the conflicting words and the discrepancies in the documentary evidence to establish the petitioner was not credible.  Go ahead. The immigration judge and the board focused on, and that was the criminal conviction in Armenia. What petitioner did is he was convicted after a most unfortunate and tragic automobile crash. His car hit the rear end of a truck on New Year's Eve in 1999 in Armenia. In April of 2004, he was convicted in the Armenian court of violation of Article 173, Part 2 of the Armenian Code. Your Honor is correct. The record does not reveal what particularly that offense was. We would submit that exactly what the offense was is not significant because the linchpin of the analysis turns on the petitioner's assertion that this whole matter was concocted. And it was concocted by the government in order to try to get... and the guy did die and he did cause the accident, but that somehow the government, either the government, and it wasn't clear about this, either the government caused the accident, which occasionally happens, or that they were out to get him so they prosecuted him when they otherwise would have prosecuted him. At page 215 of the record, he used the word, and these are his words, the matter was cooked up. Right, what was cooked up? Petitioner's counsel argues that the criminal prosecution was cooked up as almost a subterfuge. He certainly never said that there wasn't an accident or his friend didn't die or anything else like that. He never said that. He said the opposite. Exactly, and that's most significant, Your Honor. He, on page 212, admitted that he was a driver. Right. On page 236, he admitted that he pled guilty. He offered, petitioner offered, the court decision at page 576 through 578. Right. 577, there were five witnesses that the court decision established that the accident occurred. There were, and it obviously happened. He was not disputing that it happened. My understanding is that he was disputing either that the government caused the accident or that what was cooked up was the prosecution because it wouldn't ordinarily have been prosecuted. But the, probably the most significant matter is that he admitted that he pled guilty, and it was only 11 years later that he came into immigration proceedings and asserted that the prosecution was cooked up. People don't plead guilty to things they don't think they did? I beg your pardon? People don't plead guilty under some circumstances when they think it's the better part of valour if they think they weren't guilty? Well, another matter is that when he came across the border in 2004, when he came to L.A. International Airport and he was questioned for the first time, he admitted that he was driving the car and he admitted that this was not an accident. And so those are other statements by Petitioner that are inconsistent with his assertion. You said he admitted that it was not an accident? He admitted that it was not an accident. He said, I don't believe it was an accident. On page 548 of the record, he was sworn in his own oath. What does that mean? Well, if it's not an accident, then you're... Could it be cooked up? Could it have been set up? It could have been cooked up. Wait, one way to take that. But what difference does that make? I don't understand it. He believes that, okay? He has no proof of it. He doesn't report to have any proof of it. He believes it. What does it prove? Why does that make him a liar? Because is there any proof that he doesn't believe that? The point is, is Petitioner argues in your question has the supposition that he did subjectively believe that, and that goes to the heart of the credibility determination in terms of the military... Okay, and what is the evidence that he didn't subjectively believe it as opposed to the fact that maybe it wasn't true?  If he were right, obviously they wouldn't write in the court document that we're prosecuting him because of his family's political history and his political history. I mean, that's silly. It doesn't refute. It doesn't say anything about it. So what does it prove? What does the criminal conviction prove? It proved that he was convicted, and he didn't say he wasn't. So what does it prove? It proves that he was criminally culpable for an action. No, it proves that they held him criminally culpable. That's correct. Right. And his statement when he came to the United States the first time in 2004 and the fact that he waited until 11 years to assert that it was cooked up. But what does it prove about whether he believed that it was cooked up? Well, the fact that he pled guilty establishes his culpability. Yeah, but you're not taking the point that people sometimes plead guilty because that's the most rational choice even if something has been cooked up. We do get people in the United States, we're quite familiar with it, who plead even as they protest their innocence, and it turns out sometimes they're innocent. So, yes, he pled guilty. We got that. Yes, I would submit to Your Honor that Petitioner never testified that that was the circumstance. But I have to say I share Judge Berzon's bafflement a little bit. Why do we care so much about this accident? That's not the persecution. We care because he asserts that the accident was cooked up in order to force him to reveal documents that allegedly that his father had. After the accident he was arrested, he asserted, and that he was held in order to try to get evidence that implicated his father and his family and himself in criticizing the government. And so if the accident was cooked up, excuse me, if the accident was cooked up, And so how does the fact that they found him guilty prove that that didn't happen? I'm really baffled by this. They had facts that showed that he was driving the car. He said he was driving the car and that somebody died. He said somebody died. He says he didn't fall asleep. They found he fell asleep. So is your point that we're supposed to, because that conclusion was made, is that the credibility finding because he said he didn't fall asleep and this says he did fall asleep? No, it doesn't relate to whether or not he fell asleep or not. It related to his criminal culpability and whether or not the whole scheme was cooked up. A petitioner on their brief on page 19 makes this point. And the petitioner made this point in closing in their argument. The immigration judge can state that it is not clear the car accident was politically motivated. And again he said, and again that's the argument, that this car accident was politically motivated or the prosecution was politically motivated and the immigration judge did not buy that particular point. And he believed that that undermined petitioner's credibility. Secondly, with regard, in addition to that, as you indicated earlier, the immigration judge focused on the fact that petitioner was misleading regarding his criminal culpability in terms of confrontations in the United States. He denied repeatedly that he was arrested for three offenses in August of 2008 and in April of 2010 for offenses that include everything from possession of drug paraphernalia all the way to burglary. But he in fact was never prosecuted and never convicted, right? And the immigration judge made that point and he made the point that it was just an arrest. So the question then becomes whether he, as somebody who didn't live here very long, is supposed to understand the word arrest. And I vaguely remember another case from Russia where there's something about the word arrest as translated that is not necessarily the same as what our idea is. But I believe, if I may, Your Honor, what the immigration judge was confronted with is that every time petitioner had a problem with authorities, whether it was in Armenia or in the United States, he had an explanation that was contradictory. Well, he surely didn't think he was going to persuade anybody that whatever the document said wasn't so. So he was, therefore, conveying his understanding of what happened to him. I mean, he knew that something happened and there were documents about them. And if they said he was arrested in the way we use the term arrested, he couldn't have been trying to buck that. He was trying to buck what he understood it meant. The immigration judge confronted petitioner with the documents and what was disconcerting with the evidence. These are the words of the immigration judge, his vehement denials. And it was his vehement denials that belied his credibility. So the immigration judge... He agreed that he was taken to the police station, right? That's correct, he did. He just didn't think it was an arrest. That's what he asserted. Now, again, we go back to what he... He agreed the incidents happened. He agreed the incidents happened. He agreed he was taken to the police station, right? So why does it mean that he didn't think he was, quote, arrested? Well, that's his subjective belief and the immigration judge found that not credible and the nature of his denials belied his credibility. Because he said, I didn't even go to court. So he apparently thought if you didn't go to court, you weren't arrested. That's one arguable interpretation, but the court has the standard of review and the question is whether the evidence compels that conclusion. And another important point, the immigration judge's words were a pattern of contradiction and inconsistencies. So it was a petitioner's response not only to his Armenian conviction that he pled guilty, but also when he had criminal problems in the United States, how did he respond? The immigration judge said that that was a pattern. You asked a question earlier, Your Honor, about the contradictions with regard to the father's asylum claim. Why that was particularly critical is that petitioner asserted that he was present in Russia... Excuse me, present in Armenia between December of 1999 until November of 2002. So almost a three-year period. But, in fact, the original premise of the DHS lawyer was that because his father said he was in Russia in February, he couldn't have been in Armenia in December. That's just stupid. So, I mean, she said there was an implied contradiction, but there wasn't one. So he had no particular reason to be making this story up because there was no contradiction between being in Armenia in December and being in Russia in February. Well, the incident that he asserted occurred in Armenia in December of 2001 is in the time period where he claims that he was entirely in Armenia. And the fact that his father's asylum claim says that he was... But the point is there was no reason for him to be lying about... The premise of the lawyer was that he had a reason to lie because there was a contradiction between what his father said and his story. But there wasn't a contradiction between what his father said and his story. So he had no reason to be making up a story about where he was. I submit to the court, if a person says they were in Armenia for a three-year period, and as a matter of fact, it's established that they were in Russia... I understand that, but I'm trying to say that ordinarily or often when you're trying to talk about credibility, you say, does this advance his argument? It doesn't advance his argument because he didn't have to be... There's no reason that for his story he had to not be in Russia in February. But the important idea, though, is that his father's asylum claim established arguably that he was in Russia, not Armenia... But it doesn't go to the heart of his claim or have anything to do with his claim because it doesn't matter whether he was in Russia in February. It matters if he was in Russia in February. It indicated that he was not truthful in his assertion that he was in Armenia for three years. But that's the heart of the claim question rather than whether he's telling the truth. I beg your pardon? That's the heart of the claim issue rather than an issue as to whether he's telling the truth. That's correct. And the other point is let's look at Petitioner's explanation in that regard, and the explanation was that my father was confused because he had my brother confused. But on page 304 of the record it establishes that the brother was in Russia also. So Petitioner's explanation belies his claim. Okay. Well, we've taken you over. Are there no further questions from the bench? Thank you, Your Honor. Okay. Why don't we put two minutes on the clock for you? Basically I can answer any questions, but basically the judge took something that wasn't relevant, the convictions, and took something that wasn't a contradiction and made a credibility finding. I don't think there was any more that she drew it on. This car accident that basically is the only thing that the government talks about, it's his opinion of what happened. It's one thing the judge could have said, well, you didn't establish that it was based on. When I read the record and looked at all those documents and looked at what the ALJ did, it looks like she looked or he looked at all the documents, and from that took the guilty plea, the probation later came. He was sentenced for a certain amount of time, and then it was reduced. So she characterized all the documents as this was a legitimate prosecution for whatever the offense was. Even if he doesn't believe it. Right, right. But she looked at the documents, and she read the documents in a certain way, or he, the IJ, read the documents in a certain way. At a most favorable interpretation of the government, that would be okay, but then there's the rest of the claim that's credible and consistent. Even let's say I say you were convicted of this. It had nothing to do with your political activities. He, in his heart of hearts, believes it was. But clearly there's not enough evidence to show that he lied or mischaracterized. If she disagrees, that's one thing. But there's clearly the rest of the case that establishes his application for asylum. I have nothing further, Judge. Thank you very much. Thank you. Case of Dulacanian v. Lynch submitted for decision.
judges: Fletcher, Paez, Berzon